| | | |
|---|---|---|
| FREDERICK RAY AKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:10-CV-328 |
| | § | |
| LIBERTY COUNTY, TEXAS; PHIL | § | |
| FITZGERALD, in his Official Capacity; | § | |
| LIBERTY COUNTY SHERIFF'S | § | |
| DEPARTMENT EMPLOYEES, in their | § | |
| Individual Capacities and Whose Names are | § | |
| Presently Unknown to Plaintiff; | § | |
| COMMUNITY EDUCATION CENTERS, | § | |
| INC.; EMPLOYEES OF COMMUNITY | § | |
| EDUCATION CENTERS, INC., and | § | |
| TIMOTHY NEW, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendants Liberty County, Texas ("Liberty County") and Liberty County Judge Phil Fitzgerald's ("Judge Fitzgerald") (collectively, the "Liberty County Defendants") Motion for Summary Judgment (#78) and Defendants Community Education Centers ("CEC") and Warden Timothy New's ("Warden New" or "New") Motion for Summary Judgment (#81).[1] Defendants seek the dismissal of Plaintiff Frederick Ray Akins's ("Akins") claims pursuant to Federal Rule of Civil Procedure 56. Also pending is CEC and Warden New's Motion for Judgment on the Pleadings (#79), wherein CEC and New seek dismissal of Akins's claims under Federal Rule of Civil Procedure 12(c). Having considered the pending motions, the

---

[1] For the sake of simplicity, the court will refer to all defendants collectively as "Defendants" where appropriate.

submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Defendants' motions should be granted.

I.    Background

      A.    Procedural History

On June 8, 2010, Akins filed the instant lawsuit, asserting numerous causes of action against Defendants[2] arising from his detention in the Liberty County Correctional Facility ("the jail") from June 8, 2009, to June 12, 2009. Akins seeks to recover pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 for violations of his constitutional "rights," "rights and privileges," denials of "due process and equal protection," and a denial of his "statutory rights." In addition, Akins asserts several state law tort theories, including premises liability, negligence, misuse of information and negligence in the handling of medical information, defamation, libel per se, defamation per se, intentional infliction of emotional distress, and vicarious or respondeat superior liability.

The Liberty County Defendants moved for summary judgment on March 27, 2012. The next day, March 28, 2012, CEC and Warden New moved for summary judgment and judgment on the pleadings. Pursuant to Local Rule CV-7(e), Akins's responses were due on April 13, 2012, and April 15, 2012, respectively. Akins, however, did not respond.

Instead, on May 15, 2012, Akins filed a suggestion of bankruptcy. As a result, the case was administratively closed on May 21, 2012. Approximately one year later, on May 22, 2013,

---

[2] Several other defendants have already been dismissed from this action; namely, Hartman Newspapers, L.P., Carol Skewes, Theresa Jo Barrett, The Liberty Vindicator, Granite Publications, The Anahuac Progress, Paul Campbell, Sheriff Henry Patterson, Community Publishers, Inc., Trinity Valley Broadcasting Company, Bill Buchanan, Allen Youngblood, and i-dineout.com. *See* Docket Nos. 49, 50, 61, 62, 67 & 69.

the bankruptcy trustee filed an Abandonment of Litigation, specifically listing this lawsuit. In addition, Akins was discharged from bankruptcy on June 10, 2013. Defendants, therefore, sought to reopen the case for rulings on the instant motions. Akins failed to respond to the motion to reopen. As a consequence, Defendants' motion was granted, and the case was reopened on October 1, 2013.

To date, Akins has not responded to Defendants' motions or requested leave to do so. As a result, the court accepts as undisputed the facts set forth by Defendants in their motions for summary judgment. *See Jegart v. Roman Catholic Church of Diocese of Houma Thibodaux*, 384 F. App'x 398, 400 (5th Cir. 2010) ("When a party does not file an opposition to a motion for summary judgment, the district court is permitted to consider the facts listed in support of the motion as undisputed."); *Eversley v. MBank Dallas*, 843 F.2d 172, 175 (5th Cir. 1988); *Ass'n of Taxicab Operators, USA v. Yellow Checker Cab Co.*, 910 F. Supp. 2d 971, 975 (N.D. Tex. 2012); *Lynch v. Jet Ctr. of Dallas, LLC*, No. 3:05-CV-2229-L, 2007 WL 211101, at *3 (N.D. Tex. Jan. 26, 2007); Local Rule CV-56(c).

B.     Undisputed Facts as Asserted by Defendants[3]

1.     Akins was in Portland, Oregon, when he was advised that Liberty County Sheriff Henry Patterson ("Sheriff Patterson" or "Patterson") had a warrant for his arrest. Akins was charged with tampering with a government document with the intent to harm and was subsequently re-indicted in October 2010 for organized crime and theft.

2.     In 2009, Akins dropped out of Thomas Jefferson School of Law in San Diego, California, because of the indictments against him. Akins was previously employed as the owner of ICL Investigations, a firm that performed commercial litigation and personal injury investigations. Because of the criminal charges brought against Akins in Liberty County,

---

[3] These facts were taken from Liberty County's and CEC's motions for summary judgment and have been combined and paraphrased for purposes of this opinion.

he is precluded from and no longer maintains a private investigator's license in Texas or Missouri.

3.   After learning of his arrest warrant, Akins contacted Sheriff Patterson and traveled to Texas.  On June 8, 2009, around 8:00 a.m., Akins's son drove him to the Sheriff's Office where he was greeted by, met, and spoke with Sheriff Patterson.  Akins remained in Patterson's office for 20 to 30 minutes, waiting for Chief Jim Cooper ("Chief Cooper" or "Cooper") to arrive.  Once Cooper arrived, he escorted Akins to booking, where he booked Akins into the jail.

4.   Akins stated that Patterson had a good attitude, was cordial, and after Cooper took Akins to booking, Akins had no further interaction with Patterson.

5.   After being booked in, Chief Cooper placed Akins in a holding cell with four other individuals.  Akins remained in the cell until his arraignment.  Akins had no problems with the four individuals while in the holding cell.

6.   That same day, Chief Cooper took Akins to the 75th Judicial District Court of Liberty County, Texas, to be arraigned and to have his bond set.  After waiting in court for approximately 20 minutes, Judge Rusty Hight ("Judge Hight") saw Akins and set his bond at $100,000.00.

7.   Akins contends that misinformation about his state of residence resulted in an elevated bond—$100,000.00.  He admitted, however, that he contested the issue during the hearing and later conceded that it was the district attorney who persuaded or contributed to the judge setting the bond at $100,000.00.  CEC and New were not involved with Akins's arraignment hearing.  Akins has no personal knowledge of whether CEC or Warden New had any involvement in setting his bond.

8.   Akins believes that Liberty County Judge Fitzgerald was influential in setting his bond, but he admitted that he has no such direct evidence, was not sure if Judge Fitzgerald ever communicated with Judge Hight about his bond, and admitted that his belief is based on something he heard from a couple of political operatives whose names he does not remember.

9.   Akins had no direct dealings with Judge Fitzgerald during the events at issue in this case.  He merely heard that Fitzgerald had something to do with his situation but was unable to identify anyone or any document that would indicate Fitzgerald's involvement.  Further, Akins provided no direct evidence that Judge Fitzgerald was involved in any way with his incarceration during the five days Akins was in jail.

10. Akins stated that Judge Hight directed that Akins's CPAP (continuous positive airway pressure) machine be made available.[4]

11. After the arraignment, around 5:00 p.m. on June 8, 2009, Chief Cooper brought Akins back to the jail and permitted him to make some phone calls to his son to arrange for his bond, medications, and CPAP machine. Cooper then turned Akins over to general jail personnel. Later that evening, jail personnel moved Akins from a holding cell to general population for the remainder of the day. After he was turned over to the general jail personnel, Akins had no interaction with Cooper.

12. At all relevant times, Liberty County had a contract with an entity believed by Liberty County to be a subsidiary of CEC. Under the contract, the contractor was responsible for the maintenance, operation, and management of the jail. The contractor was also responsible to train its employees, provide sanitation/hygiene, and supply recreation, access to courts, health care services, food, commissary, telephone system, religious services, facility supplies, grievance procedures, security and control, and sufficiently trained personnel to provide 24-hour care and supervision to inmates.

13. Akins stated that Chief Cooper, like Sheriff Patterson, was cordial to him. He admitted that neither Patterson, Cooper, nor anyone associated with CEC or Liberty County, mistreated him up until this point in time and throughout the remainder of the day. Akins further admitted that his complaints did not involve any mistreatment by Sheriff Patterson or Cooper. After he was brought back from his arraignment by Cooper, Akins had no dealings with Cooper or any other Sheriff's Office personnel. Akins later dismissed Sheriff Patterson as a defendant in this case because he felt Patterson "wasn't culpable."

14. Sometime between his incarceration in the holding cell and being placed in the jail's general population, Akins saw a nurse he described as a "very nice lady."

15. When he was booked in, Akins recalled saying "Hello" to someone he later learned was Warden New, but he had no other conversations with New in June 2009, and he did not send any request for services or grievances to New in June 2009.

16. Akins makes various allegations of mistreatment while in the jail beginning on June 9, 2009, including being temporarily placed in a cell in the "old jail" one afternoon where he was subjected to a 20 to 30-minute exposure to backed-up sewage, alleged delays in receiving his CPAP machine, water, and medicine, and being placed in a solitary confinement cell (which had an electrical outlet for his CPAP machine).

17. Akins testified that he did not have his CPAP machine or medications and started getting ill sometime after being booked into the jail.

---

[4] Akins uses a CPAP machine to control his sleep apnea.

18. Akins was moved from the holding cell to general population where he spent the night of June 8, 2009. Akins was taken to the old jail, a separate building, on the afternoon of June 9, 2009, by a female officer named Chapman. At the old jail, Akins was placed in a cell on the lower block by a male officer. Akins testified that the cell in which he was placed had a plugged drain and feces on the floor. He stayed in that cell for 20 to 30 minutes. He was then removed to a holding cell near the old jail's control room. He claims that the correctional officer who moved him to the holding cell apologized for the plumbing leak.

19. While in the holding cell, a nurse came to see Akins and gave him blood pressure medication. She came back every hour after that and kept giving Akins additional blood pressure medication. Once the nurses at the jail determined that Akins needed blood pressure medication, "they stayed on [him] until they got it straightened out." Akins remained in the holding cell the night of June 9, 2009. He claims that the sink in the holding cell was broken, and a trustee provided him some water. The nurses brought water to Akins at every pill pass. Akins also received liquids with his meals but testified that he did not care for the drinks that were served.

20. On June 10, 2009, Akins was moved to a look-down cell, which he referred to as a solitary confinement cell in his deposition.

21. Akins's contention that he did not receive "needed medical equipment" referred to his CPAP machine. Akins saw his son at the jail with the CPAP machine on June 10, 2009, and waved to him. He received his CPAP machine on the evening of June 11, 2009. The solitary confinement cell had an electrical outlet to accommodate the CPAP machine, but the holding cell did not. Akins got a good night's sleep after receiving his CPAP machine and blood pressure medication from the nurse.

22. While in the jail, Akins never sent a written request for services to the medical unit, and he did not discuss any of the allegations in his lawsuit with Warden New while he was at the jail in 2009. Akins testified that he is suing New because he is in management and in charge of running the jail and, therefore, he is responsible for putting Akins in harm's way. New never personally interacted with Akins. Akins is not aware of whether New was, at any time, involved with providing medical care or dispensing medication at the infirmary.

23. Akins has no knowledge of who ran the kitchen at the jail. He also does not know if he was placed on a low-salt diet. Akins testified that he received between 10 and 13 meals at the jail and that two of those meals were "salty." He also claims that two meals smelled like urine, but he has no personal knowledge whether anyone urinated in his food. Further, Akins conceded he had no personal knowledge of the nutritional plans or the requirements for nutrition at the jail.

24. During his stay at the jail, Akins was on blood pressure medication, which the nurses brought to him. The nurses checked his blood pressure when he was first booked in and checked it several times after that.

25. Akins has no knowledge of the contents of CEC's operations manual for the jail. At deposition, Akins was "not sure" what the "established policy or custom" violations were, but with respect to an unreasonable seizure, Akins agreed that Sheriff Patterson simply took him into custody when Akins voluntarily turned himself in. CEC personnel were only involved in assisting with booking Akins in at the jail after he surrendered himself.

26. Akins was released from the jail around noon on June 12, 2009.

27. Akins was unable to name any individuals who might have been treated similarly to the way Akins felt he was treated at the jail.

28. Akins has no knowledge that anyone with Liberty County or CEC, prior to June 8, 2009, knew of a collapsed sewer or main drain line at the jail.

29. The jail's repair records indicate no knowledge on the part of CEC or Liberty County of a collapsed sewer line prior to June 8, 2009.

30. Although Akins alleges Cooper and New verbally divulged information regarding his medical records to Bill Buchanan ("Buchanan") in the presence of Sheriff Patterson and Vanessa Brashier ("Brashier"),[5] the information is based on alleged hearsay statements from Brashier made six months before Akins's December 14, 2011, deposition. Akins was not present during these conversations. Akins has no personal knowledge of whether New or anyone associated with CEC disclosed his medical information.

31. Akins admitted that he released some of his blood pressure information into the public domain via an e-mail dated June 14, 2009, two days after he was released from the jail. Nonetheless, he also stated there were other media sources publishing this information while he was in jail. Akins, however, could not identify the sources, did not remember where he saw the information, and did not produce any supporting documentation. He also does not know when the alleged statements by Cooper and/or New were made to Brashier and Buchanan.

32. Akins stated that the release of his medical information embarrassed him, as he does not like his private medical information being made public.

---

[5] Brashier is a senior editor of the Cleveland Advocate. Buchanan is a radio broadcaster for the Trinity Valley Broadcasting Company.

33.     Akins admitted he is not asserting any defamation claims against CEC, New, or Liberty County, and is not aware of CEC, New, Liberty County, Patterson, or Fitzgerald publishing any defamatory statements about him.

34.     Akins stated he was not sure if CEC, New, Liberty County, or Patterson was negligent in determining whether certain statements were true before they were published.

35.     Other than his hearsay allegations concerning New, Akins has no evidence that New intentionally tried to hurt him in any way.

36.     Akins admitted he has no reason to believe that Liberty County discriminated against him because of his race or gender.  Akins also testified he did not know of any voting rights or contract issues he had with Liberty County.  Further, other than an alleged CEC employee calling Akins a "Cracker" on one occasion, Akins has no evidence CEC discriminated against him based on his race or gender or attempted to prevent him from voting or entering into a contract.

37.     Although Akins alleged he received anonymous threatening text messages, he was not able to trace them or determine their origin.  No one associated with CEC, including New, ever threatened Akins with bodily harm.

38.     On July 8, 2009, Akins sent an e-mail to Sheriff Patterson complaining about his detention. Patterson responded on July 10, 2009, that if Akins intended to file a formal complaint, he would have to come into the Sheriff's Office on July 13, 2009, and complete the appropriate paperwork.  The letter also stated that if a formal complaint was filed, an investigation would immediately commence, and an investigator would meet with Akins for more information.  There is no evidence that Akins filed a formal complaint.

39.     On December 31, 2009, more than 6 months after his incarceration, Akins's counsel sent Liberty County a Notice of Claims letter asserting $5,011,500.00 in damages and demanding $1,008,500.00 to settle.

II.     <u>Analysis</u>

        A.      <u>Summary Judgment Standard</u>

        Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and

identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454. The moving parties, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith ex rel. Estate of Smith*, 391 F.3d at 624. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the

[nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can

11

exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.    Judgment on the Pleadings Under FED. R. CIV. P. 12(c)

CEC and Warden New move for judgment on the pleadings and seek to dismiss certain of Akins's state law claims.[6] Rule 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c); *accord Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001); *see Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "A motion brought pursuant to FED. R. CIV. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990); *see Great Plains Trust Co.*, 313 F.3d at 312; *United States v. Renda Marine, Inc.*, 750 F. Supp. 2d 755, 763 (E.D. Tex. 2010), *aff'd*, 667 F.3d 651 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1800 (2013). Such motions are treated as a motion for judgment on the pleadings based on a failure to state a claim upon which relief can be granted. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013); *Gentilello v. Rage*, 627 F.3d 540, 543-44 (5th Cir. 2010) ("We evaluate a

---

[6] CEC and Warden New move for summary judgment and judgment on the pleadings as to the majority of Akins's claims against them. For two of Akins's claims, intentional infliction of emotional distress and Abuse of Official Capacity or Official Oppression, however, CEC and New failed to seek summary judgment. Rather, they moved for dismissal of these causes of action pursuant to Rule 12(c). Therefore, with the exception of these two claims against CEC and New, the court will apply Rule 56.

motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim."); *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (same). The primary focus is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *See United States v. 0.073 Acres of Land*, 705 F.3d 540, 543 (5th Cir. 2013); *Great Plains Trust Co.*, 313 F.3d at 312; *Hughes*, 278 F.3d at 420.

"'Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.'" *Great Plains Trust Co.*, 313 F.3d at 312 (quoting *Hughes*, 278 F.3d at 420). In making such a determination, the court is restricted to the pleadings and must accept all allegations as true. *See Hughes*, 278 F.3d at 420 (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)); *see also Great Plains Trust Co.*, 313 F.3d at 312. The court will not, however, accept as true conclusory allegations or unwarranted deductions of fact. *See Great Plains Trust Co.*, 313 F.3d at 313.

C.     42 U.S.C. § 1983

Akins asserts a host of § 1983 claims against Defendants. He complains of constitutionally deficient jail conditions based on inadequate and unsanitary housing, inadequate and/or unsanitary food, inadequate medical care (including water), and inadequate recreation, as well as a totality of faulty conditions. Akins also contends that the exercise of unidentified established policies and customs violated his clearly established rights under the United States Constitution, including: (a) unreasonable seizure of his person; (b) the use of unreasonable, unnecessary, and excessive force; (c) cruel and unusual punishment; and (d) deprivation of medical care for injuries received while in custody.

In addition, Akins avers that unidentified officers and employees of CEC and Liberty County violated § 1983 by acting willfully, deliberately, maliciously, or with reckless disregard for his clearly established constitutional rights.  He further contends that Liberty County, CEC, and their employees "violated his civil rights while he was in custody" and that CEC and Liberty County are vicariously liable for the acts of their employees.  Finally, Akins asserts vague due process and equal protection claims, as well as "misuse of information" claims pertaining to medical information Akins believes was released to the media.  With regard to Liberty County, Akins also generally avers that Liberty County had a policy or custom of "tolerating misconduct on the part of jail staff, encouraging misconduct by failing to adequately supervise, discipline, or train jail personnel."

Defendants counter that Akins's § 1983 claims are legally infirm for a number of reasons, including:  (1) Liberty County and CEC cannot be vicariously liable for the actions of its employees and cannot be liable if their employees did not commit a constitutional violation; (2) there is no evidence that a Liberty County or CEC policy or custom was the moving force behind the alleged deprivations of Akins's constitutional rights; and (3) there is no evidence that any CEC or Liberty County employee or official personally participated in a deprivation of Akins's constitutional rights.

        1.       § 1983 Generally

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.  *See Inyo Cnty. v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 708 (2003); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994); *Goodman v. Harris*

*Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007).  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983; *accord Connick v. Thompson*, ___ U.S. ___, ___ , 131 S. Ct. 1350, 1359 (2011).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013).

Thus, for Akins to recover, he must show that Defendants deprived him of a right guaranteed by the Constitution or the laws of the United States.  *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986); *Baker*, 443 U.S. at 139; *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 855 (5th Cir. 2012).  "[T]he first step in a § 1983 analysis is to identify the specific constitutional [or federal] right involved."  *Oliver v. Scott*, 276 F.3d 736, 744 n.10 (5th Cir. 2002) (citing *Baker*, 443 U.S. at 140); *see Sepulvado*, 729 F.3d at 420 n.17.  "'Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.'"  *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (quoting *Baker*, 443 U.S. at 146); *accord Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 n.15 (2005); *Covington Cnty. Sch. Dist.*, 675 F.3d at 858.  Akins must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Davidson v.*

*Cannon*, 474 U.S. 344, 348 (1986); *Daniels*, 474 U.S. at 328. The negligent deprivation of life, liberty, or property is not a constitutional violation and does not give rise to liability under the Act. *See McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir.), *cert. denied*, 506 U.S. 973 (1992).

2.    Governmental Liability

When a § 1983 suit is brought against a governmental entity, a plaintiff "must plead facts which show that: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; (4) and the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996); *accord Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010); *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 2094 (2011). The key to recovery under § 1983 against a governmental entity or a private corporation performing a governmental function is demonstrating the deprivation of a constitutional right inflicted pursuant to an official policy or custom. *See Connick*, 131 S. Ct. at 1359; *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3059 (2011); *accord Olivas v. Corr. Corp. of Am.*, 408 F. Supp. 2d 251, 254-55 (N.D. Tex. 2006), *aff'd*, 215 F. App'x 332 (5th Cir. 2007) (recognizing that the standards applicable to governmental § 1983 liability similarly apply to private corporations performing governmental functions). For § 1983 liability to attach, a plaintiff must demonstrate three elements: "'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'" *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005), *cert. denied*,

547 U.S. 1130 (2006) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), *cert. denied*, 524 U.S. 820 (2001)); *accord Zarnow*, 614 F.3d at 166; *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski*, 237 F.3d at 578 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998), *cert. granted*, 525 U.S. 1098, *cert. dismissed*, 526 U.S. 1083 (1999)); *accord James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009), *cert. denied*, 558 U.S. 1114 (2010); *Rivera*, 349 F.3d at 247. Moreover, when proceeding under § 1983, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff . . . ." *Piotrowski*, 237 F.3d at 579. Therefore, to sustain liability under § 1983, Akins must point to more than isolated unconstitutional actions of a CEC or Liberty County employee; instead, he "must identify a policymaker with final policymaking authority and a policy that is the 'moving force' behind the alleged constitutional violation." *Rivera*, 349 F.3d at 247 (quoting *Piotrowski*, 237 F.3d at 578).

The United States Supreme Court has expressly held that local governmental entities may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see Collins v. City of Harker Heights*, 503 U.S. 115, 120-21 (1992); *Zarnow*, 614 F.3d at 166; *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002). A governmental entity may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."

*Monell*, 436 U.S. at 690-91; *accord Zarnow*, 614 F.3d at 166. The United States Court of Appeals for the Fifth Circuit has defined an official policy or custom as:

1.     A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.     A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985)); *accord Cox*, 430 F.3d at 748-49; *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002), *cert. denied*, 537 U.S. 1110 (2003); *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001).

The first type of "policy" is characterized by formal rules and understandings which constitute fixed plans of action to be followed under similar circumstances consistently and over time. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *accord Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 754 (5th Cir. 1993). The second type of "policy" arises from custom, *i.e.*, "conduct that has become a traditional way of carrying out policy and has acquired the force of law." *Bennett*, 728 F.2d at 768. A third type of "policy" stems from "a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations.'" *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 406 (1997) (quoting *Pembaur*, 475 U.S. at 481); *accord In re Foust*, 310 F.3d 849, 862

(5th Cir. 2002). "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which the county may be liable." *Bryan Cnty.*, 219 F.3d at 462; *accord Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005). Under this type of "policy," a municipality can be liable only if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers. *See Bryan Cnty.*, 219 F.3d at 462; *accord Woodard*, 419 F.3d at 352. Such "authorized decisionmakers" are defined to be officials "'whose edicts or acts may fairly be said to represent official policy'" and whose decisions may therefore result in governmental liability under § 1983. *Bryan Cnty.*, 219 F.3d at 457 n.9 (quoting *Monell*, 436 U.S. at 694); *accord Woodard*, 419 F.3d at 352; *Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003); *Pineda*, 291 F.3d at 328. Furthermore, the Fifth Circuit has held that when a final policymaker makes a decision, and that decision is within the sphere of the policymaker's final authority, "'the existence of a well-established, officially-adopted policy will not insulate the municipality from liability.'" *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (quoting *Gonzalez*, 996 F.2d at 754).

Where a custom is shown, the plaintiff must demonstrate that "'[a]ctual or constructive knowledge of such custom [is] attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.'" *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)); *see Cox*, 430 F.3d at 749 n.53; *Johnson*, 379 F.3d at 309; *see also McGregory v. City of Jackson*, 335 F. App'x 446, 449 (5th Cir. 2009) (citing *Bennett*, 728 F.2d at 768). Indeed, "[p]roof of a custom and knowledge of that custom are separate elements." *Garcia v. Contreras*, No. C-07-359, 2008 WL

4646897, at *9 n.8 (S.D. Tex. Oct. 20, 2008) (citing *Pineda*, 291 F.3d at 330); *accord Cox*, 430 F.3d at 749; *Rivera*, 349 F.3d at 249; *Garcia v. Cnty. of El Paso*, 79 F. App'x 667, 669-70 (5th Cir. 2003); *Burris v. Davis*, 642 F. Supp. 2d 573, 581 (S.D. Miss. 2009). "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842; *accord Bennett*, 728 F.2d at 768. "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information." *Bennett*, 728 F.2d at 768. "'Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" *Webster*, 735 F.2d at 842 (quoting *Bennett*, 728 F.2d at 768).

In any event, a governmental entity may not be held liable for the acts of its employees under a theory of *respondeat superior*. *See Monell*, 436 U.S. at 694; *Zarnow*, 614 F.3d at 167; *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 384 n.45 (5th Cir. 2005); *Pineda*, 291 F.3d at 328; *Piotrowski*, 237 F.3d at 578; *Flores v. Cameron Cnty.*, 92 F.3d 258, 263 (5th Cir. 1996). "Municipalities are not vicariously liable for the actions of their employees under § 1983. Municipal liability inures only when the execution of a local government's policy or custom causes the injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *see Victoria W.*, 369 F.3d at 482; *Williams*, 352 F.3d at 1014. In order to hold a governmental entity liable for the acts of a nonpolicymaking employee, the plaintiff must allege and prove that: "(1) a policy or custom

20

existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc.*, 81 F.3d at 532-33; *accord Rivera*, 349 F.3d at 247; *Pineda*, 291 F.3d at 328; *Piotrowski*, 237 F.3d at 579. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 405 (citing *City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989)). "These requirements must not be diluted for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.'" *Snyder*, 142 F.3d at 796 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 415); *accord Piotrowski*, 237 F.3d at 580.

Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents generally is not sufficient to show the existence of a custom or policy. *See McClendon v. City of Columbia*, 258 F.3d 432, 441-42 (5th Cir. 2001), *reinstated in part by McClendon*, 305 F.3d at 321 n.3); *Fraire*, 957 F.2d at 1278 (citing *Rodriguez v. Avita*, 871 F.2d 552, 554 (5th Cir.), *cert. denied*, 493 U.S. 854 (1989)). "'Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability." *Campbell*, 43 F.3d at 977 (quoting *Bennett*, 728 F.2d at 768 n.3); *accord Piotrowski*, 237 F.3d at 581.

Thus, "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Pitrowski*, 237 F.3d at 581; *accord Estate of Davis*, 406 F.3d at 383;

*Johnson*, 379 F.3d at 309-10. To demonstrate a governmental policy or custom under § 1983, a plaintiff must show "'"at least a pattern of similar incidents in which the citizens were injured."'" *Estate of Davis*, 406 F.3d at 383 (quoting *Snyder*, 142 F.3d at 798-99 (quoting *Avita*, 871 F.2d at 554-55)); *accord Fraire*, 957 F.2d at 1278. Only if the plaintiff demonstrates that his injury resulted from a "'permanent and well settled'" practice may liability attach for injury resulting from a local government custom. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970)).

Moreover, a governmental entity does not incur liability under § 1983 unless there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385; *see James*, 577 F.3d at 617; *Victoria W.*, 369 F.3d at 482; *Piotrowski*, 237 F.3d at 580. The Supreme Court has explained:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404 (emphasis in original); *see Johnson*, 379 F.3d at 310; *Victoria W.*, 369 F.3d at 482. "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 415 (emphasis in original). "*Monell* describes the high threshold of proof by stating that the policy must be the 'moving force' behind the violation." *Piotrowski*, 237 F.3d at 580 (quoting *Monell*, 436 U.S. at 694); *see also City of Canton*, 489 U.S. at 389; *Cox*, 430 F.3d at 748. Hence, "the plaintiff must initially allege that an official policy or custom 'was a cause in fact of the deprivation of rights inflicted.'"

*Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dallas Indep.*
*Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)); *see Shields v. Twiss*, 389 F.3d 142, 151 (5th Cir.
2004).

Nevertheless, "'[t]his connection must be more than a mere "but for" coupling between
cause and effect.'" *Johnson*, 379 F.3d at 310 (quoting *Fraire*, 957 F.2d at 1281 (citing *City of*
*Canton*, 489 U.S. at 386; *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985)); *see James*, 577
F.3d at 617. The plaintiff must also establish that a government policy or custom was the
proximate cause of the injuries sustained. *See Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir.
1980), *cert. denied*, 450 U.S. 931 (1981) (holding that "[i]n order for a governmental unit to be
liable under § 1983, the policy or custom must . . ., by the very terms of the statute, be a
proximate cause of the constitutional violation"); *accord Johnson*, 379 F.3d at 311. Thus,
"[p]ointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a
causal connection under *Monell*. Rather, the policy must be the proximate cause of the section
1983 injury." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996), *cert. denied*,
519 U.S. 1111 (1997); *see Murray v. Earle*, 405 F.3d 278, 290 (5th Cir.), *cert. denied*, 546 U.S.
1033 (2005).

In addition, the "plaintiff must demonstrate that a municipal decision reflects deliberate
indifference to the risk that a violation of a particular constitutional or statutory right will follow
the decision." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 411; *James*, 577 F.3d at 617.
Thus, plaintiffs seeking to recover against a governmental entity under § 1983 "must first prove
a direct causal link between the [governmental] policy and the constitutional deprivation; they then
must establish that the [governmental entity] consciously enacted a policy reflecting 'deliberate

indifference' to the constitutional rights of its citizens." *Snyder*, 142 F.3d at 795-96 (citing *City of Canton*, 489 U.S. at 389); *see Johnson*, 379 F.3d at 309-10. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 410; *see Estate of Davis*, 406 F.3d at 381.

3.    Akins's Claims Against Judge Fitzgerald

As a threshold matter, the court notes that Akins has sued Judge Fitzgerald in his official capacity only. Official-capacity lawsuits are typically an alternative means of pleading an action against the governmental entity involved. *See McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Woodard*, 419 F.3d at 352 (citing *Monell*, 436 U.S. at 690 n.55); *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). A suit against an official in his or her official capacity is not a suit against the official personally but, rather, is a suit against the official's office. *See Printz v. United States*, 521 U.S. 898, 930-31 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Monell*, 436 U.S. at 691 n.55; *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 413-14 (5th Cir. 2004). As such, it is no different from a suit against the County itself. *See Printz*, 521 U.S. at 930-31; *Will*, 491 U.S. at 71 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Monell*, 436 U.S. at 691 n.55); *Woodard*, 419 F.3d at 352.

The Supreme Court has observed:

As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a

plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Graham*, 473 U.S. at 166 (emphasis in original) (citations omitted). Therefore, any § 1983 claims asserted against Judge Fitzgerald in his official capacity are merely redundant and are of no independent legal significance.

### 4. Akins's Claims Against Warden New

Here, Akins has sued Warden New solely because he was the person in charge of the jail. Other than saying "hello" to a person he later learned was the warden, Akins had no involvement at all with New. Indeed, Akins testified that he sued New because he felt New's "management and his running of the jail" caused Akins harm and because "[t]he buck's got to stop with somebody." As pointed out by Defendants, these statements suggest a theory of supervisory liability.

Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability. *See Monell*, 436 U.S. at 691-95; *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011); *Bustos*, 599 F.3d at 468; *Estate of Davis*, 406 F.3d at 381. A supervisor may be held liable, however, if he is either personally involved in the constitutional deprivation or there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Jones v. Lowndes Cnty.*, 678 F.3d 344, 349 (5th Cir. 2012); *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001); *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). In other words, "the misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor." *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997). Because Akins has produced no evidence of participation by New in any viable

claim, New is entitled to summary judgment on all § 1983 claims. *See Pesina v. Cooper*, No. H-09-2316, 2010 WL 430001, at *6 (S.D. Tex. Feb. 4, 2010) (dismissing action where plaintiff failed to set out specific facts showing that assistant warden was personally involved in alleged civil rights violations).

### 5.  Inadequate Training and Supervision

Akins alleges generally that Liberty County had a policy and/or custom of tolerating misconduct and encouraging misconduct by failing to supervise, discipline, or train jail personnel adequately. In order to hold a municipality liable under § 1983 for the acts of its employees based on a theory of inadequate training or supervision, the plaintiff must show:

(1)  the training or supervisory procedures of the municipality's policymaker were inadequate;

(2)  the municipality's policymaker was deliberately indifferent in adopting the training or supervisory policy; and

(3)  the inadequate training or supervisory policy directly caused the plaintiff's injury.

*Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000) (quoting *Baker*, 75 F.3d at 200 (citing *City of Canton*, 489 U.S. at 385-87)); *see Valle*, 613 F.3d at 544 (citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)); *Benavides v. Cnty. of Wilson*, 955 F.2d 968, 972 (5th Cir.), *cert. denied*, 506 U.S. 824 (1992); *see also Clyce v. Hunt Cnty.*, 515 F. App'x 319, 323 (5th Cir.), *cert. denied*, 134 S. Ct. 441 (2013).

With regard to the training or supervision of jail personnel, "[a] municipal 'policy' must be a deliberate and conscious choice by a municipality's policy-maker." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 389); *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 66

(2010); *see Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2012) ("[M]unicipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 n.8 (2d Cir. 2004) ("[I]n the context of a failure to supervise case, deliberate indifference may be established by showing that policymaking officials deliberately ignored an obvious need for supervision."). Indeed, governmental "liability attaches 'where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by . . . policymakers.'" *Goodman*, 571 F.3d at 396 (quoting *City of Canton*, 489 U.S. at 389). "It is . . . difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate." *Tuttle*, 471 U.S. at 823. To be actionable, therefore, "the failure to promulgate municipal policy must amount to 'an intentional choice, not merely an unintentionally negligent oversight.'" *Evans v. City of Marlin*, 986 F.2d 104, 108 (5th Cir. 1993) (quoting *Rhyne*, 973 F.2d at 392); *James*, 577 F.3d at 617-18; *accord Amnesty Am.*, 361 F.3d at 128. Hence, "a showing of simple or even heightened negligence will not suffice." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 407; *James*, 577 F.3d at 617-18; *see Conner*, 209 F.3d at 796.

In failure to train or supervise cases, the plaintiff can prove the existence of a governmental policy of deliberate indifference to individuals' rights in two ways. *See Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000). "First, he can show that a municipality deliberately or consciously chose not to train its officers despite being on notice that its current training regimen

had failed to prevent tortious conduct by its officers." *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 405). "Second, under the 'single incident exception' a single violation of federal rights may be sufficient to prove deliberate indifference." *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 409); *see Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008).

With regard to the first method, liability may be imposed for "a deficient training 'program,' necessarily intended to apply over time to multiple employees." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 407 (citing *City of Canton*, 489 U.S. at 390). Generally, there must be considerably more proof than a single instance of injury or an isolated case of a poorly trained employee before municipal liability attaches in a case in which the plaintiff alleges a policy of failure to train employees adequately. *See Tuttle*, 471 U.S. at 824; *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Snyder*, 142 F.3d at 796. In most situations, deliberate indifference requires "a showing that the policymaker was made aware of the training deficiencies by 'at least a pattern' of similar deprivations." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *see Johnson*, 379 F.3d at 309; *accord Connick*, 131 S. Ct. at 1360 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.") (internal quotations omitted). "If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 407. Indeed, a policymaker's "continued adherence to an approach that [he] know[s] or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of [his] action—the 'deliberate indifference'—necessary to trigger municipal

liability." *Id.* (quoting *City of Canton*, 489 U.S. at 390 n.10); *accord Connick*, 131 S. Ct. at 1360; *Thompson v. Pinellas Cnty.*, No. 13-10101, 2013 WL 5663281, at *1 (11th Cir. Oct. 18, 2013).

In contrast, "[b]asing liability on inadequate training [or supervision] where there is no municipal awareness of or acquiescence in a pattern of constitutional violations would potentially transform almost any encounter resulting in an injury into a valid § 1983 claim." *Kellough v. Bertrand*, 22 F. Supp. 2d 602, 611 (S.D. Tex. 1998) (citing *City of Canton*, 489 U.S. at 391). Moreover,

> that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*City of Canton*, 489 U.S. at 390-91 (citations omitted); *see Snyder*, 142 F.3d at 798. "An adequate training program must 'enable officers to respond properly to the usual and recurring situations with which they must deal.'" *Benavides*, 955 F.2d at 972 (quoting *City of Canton*, 489 U.S. at 391). Some courts have held that all that is required for a municipality to prevail on a claim based on inadequate training is compliance with state-mandated training standards for its officers. *See Huong v. City of Port Arthur*, 961 F. Supp. at 1003, 1007 (E.D. Tex. 1997).

Here, Akins does not adduce any facts indicating that any of the Liberty County's officers' actions were caused by a Liberty County policy or custom, that any such custom was the moving force behind the alleged constitutional violations, or that an authorized policy maker of Liberty

County was deliberately indifferent to an alleged unconstitutional policy or custom. Rather, Akins admitted at deposition that he had no complaints against Sheriff Patterson and Chief Cooper while he interacted with them at the jail. The undisputed facts also demonstrate that Judge Fitzgerald was not involved in Akins's arrest, arraignment, or detention at the jail. In addition, during Akins's stay, the jail was being maintained, managed, and operated by an independent contractor.

In short, Akins has not identified a written unconstitutional policy of inadequate training, supervision, discipline, or otherwise, which was the moving force behind the incidents at issue. He has also failed to show a "pattern of similar incidents" or deliberate indifference on the part of the policymaker. *Estate of Davis*, 406 F.3d at 383. For these reasons, Akins's claims for inadequate supervision, training, and discipline must be dismissed.

### 6.    Inadequate Medical Care

Next, Akins makes a number of vague and conclusory allegations regarding his claims that he was denied constitutionally adequate medical care. First, he generally avers that the medical care at the jail was deficient and that medical records were not used to assist diagnoses; he further contends that he could not obtain a medical examination or care upon request. Akins also alleges that he was not provided enough water and that he suffered chest pains, respiratory distress, severe headaches, fainting, and stopped breathing without receiving his necessary medications and breathing equipment (the CPAP machine). According to Akins, he was not given his CPAP machine until the night before his release.

"The constitutional right of a pretrial detainee to medical care arises from the due process guarantees of the Fourteenth Amendment." *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003) (citing *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)); *see Brown v.*

*Callahan*, 623 F.3d 249, 253 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 2932 (2011). In an "episodic act or omission" case such as this, the Fifth Circuit "employ[s] different standards depending on whether the liability of the individual defendant or the [governmental] defendant is at issue." *Corley v. Prator*, 290 F. App'x 749, 752 (5th Cir. 2008) (citing *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999)); *see Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011).

To recover against an individual, "the plaintiff 'must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [his] constitutional rights.'" *Olabisiomotosho*, 185 F.3d at 526 (quoting *Flores v. Cnty. of Hardeman*, 124 F.3d 736, 738-39 (5th Cir. 1997)). "Subjective deliberate indifference means 'the official had subjective knowledge of a substantial risk of serious harm to [the plaintiff] but responded with deliberate indifference to that risk,'" such as by failing to take reasonable measures to abate it. *Id.* (quoting *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996)); *see Farmer*, 511 U.S. at 847. Hence, "[t]he subjective deliberate indifference standard focuses on what the [governmental] employee actually knew." *Corley*, 290 F. App'x at 752 (citing *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002)). In explaining deliberate indifference, the Fifth Circuit has held:

> Deliberate indifference is an extremely high standard to meet . . . . [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that [the official] should have perceived, but did not[,] is insufficient to show deliberate indifference.

*Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal citations and quotations omitted). While "deliberate indifference describes a state of mind more blameworthy

than negligence . . . , it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835; *accord Thompson*, 245 F.3d at 459 ("[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."). It connotes conscious disregard for known or obvious consequences. *See Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 413 n.1.

"To succeed in holding a [county] liable, the plaintiff must demonstrate a [county] employee's subjective indifference *and additionally* that the [county] employee's act 'resulted from a [county] policy or custom adopted or maintained with objective deliberate indifference to the [plaintiff]'s constitutional rights.'" *Olabisiomotosho*, 185 F.3d at 526 (quoting *Hare*, 74 F.3d at 649 n.14) (emphasis added); *accord Duvall v. Dallas Cnty.*, 631 F.3d 203, 210 (5th Cir.), *cert. denied*, 132 S. Ct. 111 (2011) (describing the different standards for individual and governmental liability); *Corley*, 290 F. App'x at 752 (explaining that a "[plaintiff] must meet both the subjective and the objective standards" to hold a governmental entity liable). Objective deliberate indifference "permit[s] liability to be premised on obviousness or constructive notice." *Farmer*, 511 U.S. at 841 (citing *City of Canton*, 489 U.S. at 390, 396). This standard, therefore, "considers not only what the [policymaker] actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Corley*, 290 F. App'x at 752 (citing *Lawson*, 286 F.3d at 264).

Akins fails to meet the "high standard" espoused by the Supreme Court and Fifth Circuit to impose liability on Liberty County or CEC for providing purportedly inadequate medical care. First, Akins had no dealings with any Sheriff's Office personnel after June 9, 2009, as the jail was

being operated by CEC or a subsidiary of CEC. With regard to CEC, Akins testified that he received his CPAP machine on June 11, 2009, less than three days after he voluntarily surrendered to Sheriff Patterson and that he was moved to a cell with an electrical socket to accommodate the machine. Although there was a slight delay in Akins receiving his CPAP machine, he acknowledged that the jail nurses treated him for potential blood pressure issues, expressing appreciation for their efforts and stating "they stayed on me until they got it straightened out, I'll give them that." Affidavits from nurses Gwen Ellis, Connie Potter, and Scofelia Rogers, reveal that Akins received prescription blood pressure medication twice daily on June 9, 10, and 11, 2009, and medications for his acid reflux were ordered but did not arrive at the jail before his release. There is no evidence that Akins's health was in serious jeopardy as a result of a delay in receiving his CPAP machine or from the medical treatment provided by the nurses. *See Alfred v. Winn Corr. Ctr.*, 368 F. App'x 583, 584 (5th Cir. 2010) (finding no § 1983 liability where inmate eventually received his CPAP machine and his sleep apnea never posed a serious risk to his health).

Similarly, Akins points to no evidence of any harm resulting from his allegedly having insufficient water. In fact, the jail nurses brought Akins water with his blood pressure medication, which was dispensed to him twice daily on June 9, 10, and 11, 2009. Akins also received liquids with his meals, but he testified that he did not care for the beverages served. In short, the evidence before the court is insufficient to indicate that Akins's health was at risk due to a lack of water or that the medical staff was deliberately indifferent to Akins's need for water.

In short, Akins has failed to raise a genuine issue of material fact on his claims of inadequate medical care. There is simply no evidence that Defendants had a policy or custom of

inadequate medical care or that any person was deliberately indifferent to Akins's medical needs. Summary judgment, therefore, is warranted as to these claims.

7.   Insufficient Recreation

Akins also complains that he was kept in solitary confinement and was not allowed access to fresh air or to go outside for four days. "Inmates have no protected liberty interest in specific recreational opportunities and the '[d]eprivation of exercise is not a *per se* constitutional violation.'" *Flores v. Nueces Cnty.*, No. C-09-080, 2010 WL 2557775, at *11 (S.D. Tex. June 22, 2010) (quoting *Lewis v. Smith*, No. 00-31371, 2001 WL 1485821, at *1 (5th Cir. Nov. 13, 2001), *cert. denied*, 535 U.S. 1019 (2002)). "[W]hat is constitutionally required, however, is that he not be confined for long periods without the opportunity for regular physical exercise." *Lewis*, 2001 WL 1485821, at *1; *Walton v. Topps*, No. 12-0931, 2012 WL 3947629, at *8 (E.D. La. July 23, 2012), *report and recommendation adopted by* 2012 3947976 (E.D. La. Sept. 10, 2012). The Fifth Circuit "has suggested that deprivation of exercise claims should be evaluated on a case-by-case basis using, *inter alia*, the following criteria:  (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day; and (3) the overall duration of the inmate's confinement." *Hewitt v. Henderson*, 271 F. App'x 426, 428 (5th Cir. 2008) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.), *amended in part*, *vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982)).

The Constitution, however, is not concerned with "a *de minimis* level of imposition." *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996). Further, "[t]o succeed on a claim under Section 1983 for lack of exercise, a prisoner must establish 'the existence of any health hazard under the specific circumstances involved.'" *Kron v. LeBlanc*, No. 11-2263, 2012 WL 1563957,

at *21 (Oct. 1, 2012), *report and recommendation adopted by* 2013 WL 823550 (E.D. La. Mar. 6, 2013) (quoting *Ruiz*, 679 F.2d at 1152); *accord Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986); *Young v. Guseman*, No. 12-2877, 2013 WL 4648478, at *12 (E.D. La. Aug. 29, 2013); *cf. Smith v. Hebert*, No. 12-30054, 2013 WL 3243535, at *4 (5th Cir. June 28, 2013) ("As [inmate] did not allege any physical injury stemming from his confinement in administrative segregation . . ., the district court did not err in dismissing [his] claims that he was confined to a cell with inadequate sunlight and fresh air pursuant to Rule 12(b)(6).").

The court views Akins's claim regarding insufficient outdoor recreation for four days as precisely the type of *de minimis* complaint that does not rise to the level of a constitutional violation. *See Hamilton*, 74 F.3d at 106 (finding no viable constitutional claim where plaintiff was denied recreation for three days). Moreover, Akins has adduced no evidence that his health deteriorated as a result of remaining indoors. *See Young*, 2013 WL 4648478, at *12 (dismissing claim of inadequate outdoor exercise where plaintiff failed to present evidence of any deleterious health effect). Consequently, summary judgment in favor of Defendants is appropriate.

### 8. Unsanitary Cell

Akins next complains that he was exposed to unsanitary and dangerous conditions in the holding cell; namely, excess water, sewage, hazardous gas, and chemical fumes. Specifically, Akins contends that a plumbing leak from a burst pipe caused his exposure to unsanitary flooding. In addition, he asserts that the ventilation at the jail was inadequate and failed to prevent him from inhaling hazardous fumes. Akins purportedly lost consciousness as a result and had to be removed from the cell by a jail employee.

A condition of confinement claim is one that "attack[s] . . . general conditions, practices, rules, or restrictions" of confinement. *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997); *see also Anderson v. Dallas Cnty.*, 286 F. App'x 850, 857 (5th Cir. 2008). While such claims generally arise from "an explicit policy or restriction"—such as the number of bunks per cell or disciplinary segregation—a condition "may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive . . . to prove an intended condition or practice." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). The Fifth Circuit has recognized that "proving a pattern is a heavy burden, one that has rarely been met in . . . case law." *Id*. Moreover, to constitute a constitutional violation, the condition must be "'arbitrary or purposeless' or, put differently, 'not reasonably related to a legitimate goal.'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

Conditions of confinement claims are subject to the standard set forth in *Bell* and its progeny. *Shepherd*, 591 F.3d at 453. *Bell* recognized that "if a particular condition or restriction [of confinement] is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. Thus, in cases "grounded in unconstitutional conditions of confinement, the plaintiff need only show that such a condition, which is alleged to be the cause of a constitutional violation, has no reasonable relationship to a legitimate government interest." *Duvall*, 631 F.3d at 207. This is because, in such claims, "an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition." *Hare*, 74 F.3d at 644; *accord Duvall*, 631 F.3d at 207.

"[A] conditions-of-confinement claim must satisfy tests for both objective and subjective components." *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*,

503 U.S. 1, 8 (1992)); *accord Johnson v. Thaler*, 507 F. App'x 370, 371 (5th Cir. 2013); *Henry v. Guseman*, No. 12-0686, 2012 WL 3576043, at *3 (E.D. La. July 27, 2012), *report and recommendation adopted* by 2012 WL 3575373 (E.D. La. Aug. 20, 2012); *Zaragoza v. Dallas Cnty.*, No. 3:07-CV-1704, 2009 WL 2030436, at *4 (N.D. Tex. July 13, 2009). "First, he must show that his confinement resulted in a deprivation that was '"objectively, 'sufficiently serious.'"'" *Johnson*, 507 F. App'x at 371 (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834)). "Second, regarding the subjective component, the Supreme Court has adopted 'subjective recklessness as used in the criminal law,' as the appropriate test for deliberate indifference." *Johnson*, 507 F. App'x at 371 (quoting *Farmer*, 511 U.S. at 839-40). To establish deliberate indifference, the inmate "must show that the prison official knew of and disregarded an excessive risk to inmate health or safety." *Johnson*, 507 F. App'x at 371.

As with his other causes of action, Akins's conditions of confinement claims are legally infirm. He has presented no evidence that Liberty County or CEC maintained a policy or custom of housing inmates in unsanitary cells. Additionally, the record is devoid of evidence suggesting that Akins was exposed to unreasonably high levels of contaminants. Rather, the record indicates that Akins's cell was not completely enclosed and it had an air conditioning vent outside the bars.

Further, Akins's 20 to 30-minute exposure to sewage in his cell due to a broken pipe simply does not rise to the level of a constitutional deprivation. Indeed, "[s]hort term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations." *Harris v. Guseman*, No. 12-2659, 2013 WL 1786797, at *6 (E.D. La. Mar. 8, 2013); *see Davis*, 157 F.3d at 1006 (finding no objectively serious deprivation where inmate was confined for three days to

a "filthy" cell with "blood on the walls and excretion on the floors"); *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996) (perceiving no constitutional violation where prisoner was exposed for four days to raw sewage from an overflowed toilet in his cell). Moreover, Akins points to no evidence suggesting that any Liberty County or CEC employee was deliberately indifferent to his needs after becoming aware of the plumbing leak. To the contrary, a jail employee apologized for the leak and removed Akins from the unsanitary cell. Once notified of the problem, other jail personnel promptly began attempts to fix the leak. Accordingly, summary judgment is appropriate as to these claims.

### 9. Inadequate and/or Unsanitary Food

Akins, who suffers from hypertension, avers that, during his incarceration, he was served food that contained an inordinate amount of salt. He also alleges that some of the food served to him smelled like urine.

The Constitution requires "jails [to] provide inmates with 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green*, 801 F.2d at 770 (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)). The evidence in this case demonstrates that Akins was placed on a low-sodium diet after he met with a nurse following book-in. Although Akins contends that two of the twelve or thirteen meals he received while incarcerated smelled like urine, he admitted that he had no knowledge that anyone urinated in his food and no familiarity with the nutritional plans in place at the jail. He also failed to identify any harm he allegedly suffered as a result of his purportedly inadequate/unsanitary diet. Moreover, according to Warden New's affidavit, CEC did not operate the kitchen at the jail during Akins's incarceration; rather, it was operated by Aramark Correctional Services through a separate contract with Liberty

38

County. Akins has adduced no evidence to the contrary. For these reasons, his claims against Defendants premised on an inadequate diet must fail. *See Nichols v. Brown*, No. 3:11-CV-0113, 2011 WL 1979600, at *4 (W.D. La. Apr. 28, 2011) (finding no constitutional deprivation where inmate complained that he was not provided with a salt-free diet and did not allege any specific physical harm resulting from the jail's purported failure to provide the inmate with salt-free meals), *report and recommendation adopted by* 2011 WL 1938290 (W.D. La. May 20, 2011).

### 10. Excessive Force

Akins next avers that Sheriff Patterson, CEC, Liberty County Sheriff's Office employees, and CEC employees used unreasonable, unnecessary, and excessive force while detaining him. He contends that this violated his clearly established rights under the Constitution. Nonetheless, no facts accompany these allegations and no evidence to support these claims has been produced.

For excessive force claims brought by prisoners and pretrial detainees, "'[t]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson*, 503 U.S. at 7); *accord Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006); *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). Because the motive of the officer is often indiscernible, the trier of fact must base its determination on relevant objective factors suggestive of intent. *Bender v. Brumley*, 1 F.3d 271, 278 n.6 (5th Cir. 1993). "'[T]he Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."'" *Baldwin*, 137 F.3d at 839 (quoting *Siglar*, 112 F.3d at 193 (quoting *Hudson*, 503 U.S. at 7));

*accord Gomez*, 163 F.3d at 923. "[A]n Eighth Amendment violation does not occur with 'every malevolent touch by a prison guard.'" *Baldwin*, 137 F.3d at 839 (quoting *Hudson*, 503 U.S. at 9).

In this case, there is no evidence that Akins suffered even a *de minimis* injury during his placement in the lower south cell of the jail. He testified that no one mistreated him during his arrest and claimed that only one officer grabbed and pushed him when placing him in a cell, but he pointed to no evidence that he was injured by this officer. These circumstances are insufficient upon which to predicate an excessive force claim. Thus, summary judgment in favor of Defendants is warranted.

> 11.   Due Process

In the "Civil Conspiracy" section of his complaint, Akins alleges due process violations which reference "numerous false, misleading and unverified statements" allegedly published by CEC and Liberty County employees. These claims also do not survive summary judgment.

The Due Process Clause of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Procedural due process claims require a two-part analysis: (1) whether the plaintiff has a life, liberty, or property interest that is entitled to procedural due process protection; and (2) if so, what process is due. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972); *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001); *Findeisen v. N. E. Indep. Sch. Dist.*, 749 F.2d 234, 237 (5th Cir. 1984) (pointing out that a court reviewing a procedural due process claim must determine if

the plaintiff was "deprived of a protected property interest" and, if so, whether the deprivation was accomplished "without adherence to due process minimums"); *Givs v. City of Eunice*, 512 F. Supp. 2d 522, 545 (W.D. La. 2007), *aff'd*, 268 F. App'x 305 (5th Cir. 2008).

Here, it is unclear what protected interest Akins claims has been damaged. If he is contending that he has suffered damage to his reputation through the alleged release of medical information, "[a] person's interest in his reputation alone, apart from some more tangible interest such as employment, is not a sufficient liberty or property interest to fall within the ambit of the Due Process Clause." *Waltman*, 535 F.3d at 348; *accord Doe v. Silsbee Indep. Sch. Dist.*, 402 F. App'x 852, 854 (5th Cir. 2010). Akins has failed to provide evidence of any element of a procedural due process violation. Accordingly, to the extent he asserts such a claim, it is dismissed.

Substantive due process is the concept that there are certain rights so fundamental to our traditions of justice that, no matter what procedural guarantees the government affords, the government cannot abridge those rights. *See Simi Invest. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000), *cert. denied*, 534 U.S. 1022 (2001). Indeed, "[s]ubstantive due process 'bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them."'" *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels*, 474 U.S. at 331)). A substantive due process violation may occur when the government deprives a person of a constitutionally protected life, liberty, or property interest under certain circumstances. *See Simi Invest. Co.*, 236 F.3d at 249.

In his complaint, Akins does not specifically plead "substantive" due process. Moreover, there is no evidence that CEC, Liberty County, or their employees committed an act that arbitrarily, capriciously, or oppressively impacted Akins's constitutional rights. As a result, summary judgment is proper.

### 12.  Equal Protection

Akins also makes a nebulous reference to "equal protection" in his complaint. The Equal Protection Clause of the Fourteenth Amendment provides:  "No State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  "This is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'" *Artway v. Attorney Gen. of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (emphasis in original) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *accord Plyler v. Doe*, 457 U.S. 202, 216 (1982); *Gibson v. Tex. Dept. of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012); *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004); *Beeler v. Rounsavall*, 328 F.3d 813, 816 (5th Cir.), *cert. denied*, 540 U.S. 1048 (2003).  Here, Akins's equal protection claims fail because he neither alleges nor adduces evidence that he was treated differently based upon his race or other protected status.  In fact, at deposition, Akins testified that Defendants did not discriminate against him based on race or gender. *See Jez v. City of Waveland*, No. 1:10-CV-570, 2012 WL 192534, at *3 (S.D. Miss. Jan. 23, 2012) (dismissing equal protection claim where plaintiff conceded that the defendant did not treat him differently based on a protected status).  Moreover, Akins does not identify or provide evidence of a CEC or Liberty County policy or custom giving rise to an equal protection violation. *See Murray v. Earle*, 334 F. App'x 602, 608 (5th Cir. 2009) (affirming dismissal of equal

protection claim against the district attorney where plaintiff alleged no particular policy or custom that led to the purported equal protection violation). Akins's equal protection claims, therefore, also fail.[7]

D.    Conspiracy Under § 1985

A person injured as the result of a conspiracy to interfere with his civil rights may bring an action under 42 U.S.C. § 1985. Subsection 1 of the statute relates to a conspiracy to prevent a public official from performing his duty; Subsection 2 addresses a conspiracy to obstruct justice or to intimidate a party, a witness, or a juror; and Subsection 3 concerns the acts of two or more persons conspiring to deprive any person of certain civil rights. *See Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010); *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987). Specifically, § 1985(1) provides "any person" the right to be free from a conspiracy "to prevent, by force, intimidation, or threat" his acceptance of a federal office or his discharge of its duties. 42 U.S.C. § 1985(1). Section 1985(2) gives "any party or witness in any court of the United States" the right to be free from a conspiracy to deter, intimidate, or threaten him for attending or testifying. 42 U.S.C. § 1985(2); *see also Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 758 (5th Cir. 1987); *Disney v. Horton*, No. Civ. A. 2:99-CV-0138, 2000 WL 490848, at *5 (N.D. Miss. Apr. 14, 2000). Section 1985(3) provides a remedy to "any person or class of persons" harmed when "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the

---

[7] For the same reasons (no allegations or proof of intentional discrimination), any claim brought pursuant to 42 U.S.C. § 1981 is not viable. *See Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) (stating that § 1981 claims, like those brought under Title VII, require a plaintiff to establish a prima facie case of discrimination), *cert. denied*, 132 S. Ct. 1633 (2012); *Stewart v. City of Houston Police Dep't*, 372 F. App'x 475, 477 (5th Cir. 2010) ("A cause of action for racial discrimination under Section 1981 requires a demonstration of intentional discrimination.").

equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

Although Akins does not specify the subsection upon which he relies, he appears to be attempting to invoke Subsection 3 of the statute. Section 1985(3) provides, in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

*Id*. Section 1985(3) creates no rights, but "is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—the equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section." *Great Am. Fed. S&L Ass'n v. Novotny*, 442 U.S. 366, 376 (1979).

To recover under § 1985(3), the plaintiff must allege and prove four elements: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir.), *cert. denied*, 131 S. Ct. 507 (2010); *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994); *Deubert*, 820 F.2d at 757. In addition, the conspiracy must be motivated by

"'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Scott*, 463 U.S. at 829 (quoting *Griffin*, 403 U.S. at 102); *see Lockett*, 607 F.3d at 1002; *Hilliard*, 30 F.3d at 653 (citing *Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.), *cert. denied*, 512 U.S. 1207 (1994)).

Here, Akins does not allege or adduce any evidence of an unlawful conspiracy. He has presented no facts suggesting the existence of a conspiracy "aim[ed] at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin*, 403 U.S. at 102; *see Roe v. Abortion Abolition Soc'y*, 811 F.2d 931, 933-34 (5th Cir.), *cert. denied*, 484 U.S. 848 (1987). Moreover, Akins testified that he did not know of any voting rights issues with Liberty County or CEC, and there is no indication that Akins was a victim of racial or class-based animus. Thus, summary judgment in favor of Defendants is proper.

E.     State Law Claims

In addition to his federal causes of action, Akins asserts various common law tort theories, including claims against Liberty County, CEC, and their employees and agents for premises liability and negligence related to the control, operation, and maintenance of the jail,[8] misuse of information, negligent handling of information, intentional infliction of emotional distress, and civil conspiracy. His complaint asserts claims for defamation, libel per se, and defamation per se; however, these allegations are not directed against Liberty County, CEC, or their employees.

---

[8] Akins's negligence causes of action are based on the "condition(s) and defects on the premises." Accordingly, the court construes them to be the same as his premises liability claims. In any event, a negligence claim based upon negligent activity fails here, as there is no allegation or proof of a contemporaneous activity on the part of Defendants. *Somoza v. Rough Hollow Yacht Club, Ltd.*, No. 03-09-00308-CV, 2010 WL 2867372, at *4 (Tex. App.—Austin July 20, 2010, no pet.) ("Although a litigant may maintain causes of action for both general negligence and premises liability, . . . under the general-negligence theory of recovery, the claimant's injury must result from the defendant's contemporaneous activity.").

Nonetheless, Akins's claims for intentional infliction of emotional distress, negligent handling of information, and civil conspiracy against Defendants are based on their alleged release of defamatory material and information protected under the Health Insurance Portability and Accountability Act. Lastly, Akins's claims for vicarious/respondeat superior liability are asserted against CEC and New, but not Liberty County. Defendants advance multiple viable grounds for dismissal of all the aforementioned claims.

1.     Sovereign Immunity under Texas Law—Texas Tort Claims Act

In Texas, it has long been recognized that sovereign immunity, unless waived, protects the State, its agents, and its officials from lawsuits for damages. *See Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 846 (Tex. 2009); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369 (Tex. 2009); *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). A governmental entity has sovereign immunity and cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. *See City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000); *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000). "Governmental immunity from suit defeats a court's subject matter jurisdiction." *Whitley*, 104 S.W.3d at 542; *see Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009); *City of Dallas v. Turley*, 316 S.W.3d 762, 767 (Tex. App.—Dallas 2010, pet. denied). "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Whitley*, 104 S.W.3d at 542; *see Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Teague v. City of Dallas*, 344 S.W.3d 434, 437-38 (Tex. App.—Dallas 2011, pet. denied);

*Harris Cnty. v. Luna-Prudencio*, 294 S.W.3d 690, 696 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

The Texas Legislature enacted the Texas Tort Claims Act ("TTCA") to waive sovereign immunity in certain limited and narrowly defined circumstances. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025 ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."); *Whitley*, 104 S.W.3d at 544; *Miller*, 51 S.W.3d at 587; *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 340, 343 (Tex.), *cert. denied*, 525 U.S. 1017 (1998); *accord Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 96 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Counties, as political subdivisions of the State of Texas, fall within the parameters of the Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B); *accord Johnson v. Johnson Cnty.*, 251 S.W.3d 107, 109 (Tex. App.—Waco 2008, pet. denied).

The TTCA waives immunity, however, for only three areas of liability: (1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal or real property; and (3) claims arising from premises defects. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.022; *accord Brown*, 80 S.W.3d at 554; *Able*, 35 S.W.3d at 611; *Fox v. Wardy*, 318 S.W.3d 449, 455 (Tex. App.—El Paso 2010, no pet.); *Villegas v. Tex. Dep't of Transp.*, 120 S.W.3d 26, 31-32 (Tex. App.—San Antonio 2003, pet. denied). To hold a governmental entity liable under the TTCA for the acts of its employees: (1) the claim must arise under one of these three specific areas of liability; and (2) the claim must not fall within an exception to the waiver of sovereign immunity. *See City of Waco v. Williams*, 209 S.W.3d 216, 220 (Tex. App.—Waco 2006, pet. denied); *Harris Cnty. v. Cabazos*, 177 S.W.3d

105, 109 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "The determination of a governmental entity's negligence will be made only after a claimant has cleared these two statutory hurdles." *Alvarado v. City of Brownsville*, 865 S.W.2d 148, 155 (Tex. App.—Corpus Christi 1993), *rev'd on other grounds*, 897 S.W.2d 750 (Tex. 1995).

The TTCA does not, however, waive immunity for intentional torts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057; *Goodman*, 571 F.3d at 394; *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 581 (Tex. 2001); *Jones v. Tex. Dep't of Crim. Justice*, 318 S.W.3d 398, 404 (Tex. App.—Waco 2010, no pet.); *Presiado v. Sheffield*, 230 S.W.3d 272, 275 (Tex. App.—Beaumont 2007, no pet.). In fact, the TTCA's waiver of immunity expressly excludes intentional torts such as assault, battery, and false imprisonment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2)); *see also Cameron Cnty. v. Ortega*, 291 S.W.3d 495, 497-98 (Tex. App.—Corpus Christi 2009, no pet.); *accord Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 641 (S.D. Tex. 2001) (noting that TTCA does not waive immunity for claims of intentional infliction of emotional distress or defamation); *Kellough*, 22 F. Supp. 2d at 612 (holding that the TTCA does not waive immunity for intentional infliction of emotional distress). Consistent with these authorities, Liberty County may not be held liable for Akins's claims for intentional infliction of emotional distress or any other intentional tort asserted.

In the case at bar, none of Akins's claims against Liberty County (misuse or mishandling of information, premises liability, intentional infliction of emotional distress, or civil conspiracy) arise from the operation or use of a motor vehicle. Likewise, these claims do not appear to be caused by a condition or use of tangible personal or real property. *See Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 178 (Tex. 1994) (indicating that tangible property is property that can

be handled, touched, or seen); *Arnold v. Univ. of Tex. Sw. Med. Ctr.*, 279 S.W.3d 464, 469 (Tex. App.—Dallas 2009, no pet.) ("While paper itself can be touched, handled, and seen, medical information recorded on paper is not tangible personal property."); *see also Petta*, 44 S.W.3d at 581 (recognizing that the TTCA does not provide for liability based upon a misuse of information); *Bossley*, 968 S.W.2d at 343 ("Property does not cause injury if it does no more than furnish the condition that makes the injury possible."); *Univ. of Tex. M.D. Anderson Cancer Ctr. v. King*, No. 14-12-00847, 2013 WL 3226790, at *2 (Tex. App.—Houston [14th Dist. June 27, 2013, no pet.) (stating that "nonuse of property [is] insufficient to fall within [TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2)]"). Accordingly, with the exception of the premises liability claims, Liberty County has not waived immunity as to the aforementioned claims.

### 2. Premises Liability

Akins's premises liability claims—which are asserted against Liberty County, CEC, and their employees—fail for different reasons. A federal court sitting in diversity, such as this one, looks to Texas law for the substantive standards defining a premises operator's duty. *Dixon v. Wal-Mart Stores, Inc.*, 330 F.3d 311, 314 (5th Cir. 2003). When a lawsuit is brought against a government-run prison facility, inmates are statutorily codified as licensees for the purpose of premises liability claims. *See* TEX. CIV. PRAC. & REM. CODE § 101.022.[9] It reasonably follows that the same standard should be applicable in the instant case, as CEC is performing a

---

[9] Subsection (b) of § 101.022 provides for an invitee standard where "special defects" such as where "excavations or obstructions on highways, roads or streets" are involved or where "traffic signs, signals or warning devices" are involved. Although Akins alleges a "special defect" in his complaint, the court finds Subsection (b) inapplicable here, where the premises defect is alleged to be inside the jail rather than on a roadway. *See Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010) ("We have described the class of conditions intended by the statute as those which, because of their size or some unusual quality outside the ordinary course of events, . . . pose an unexpected and unusual danger to ordinary users of roadways.") (internal citations and quotations omitted).

governmental function. *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a) (identifying "establishment and maintenance" of jails as a government function); *see also Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (explaining that a private company administering a prison facility can be sued under § 1983 because it is "performing a public function traditionally reserved to the state"); *Stephens v. Corr. Servs. Corp.*, 428 F. Supp. 2d 580, 583 (E.D. Tex. 2006) (same).

The duty owed by a licensor to a licensee is not to "injure the licensee willfully, wantonly, or through gross negligence or, in cases in which the owner or occupier has actual knowledge of a dangerous condition . . ., to warn of or make safe the dangerous condition." *Osadchy v. S. Methodist Univ.*, 232 S.W.3d 844, 853 (Tex. App.—Dallas 2007, pet. denied); *accord Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). Therefore, to prevail, Akins must adduce evidence of either willful, wanton, or grossly negligent conduct or that: (1) a condition of the premises created an unreasonable risk of harm; (2) Defendants actually knew of the condition; (3) Akins did not actually know of the condition; (4) Defendants failed to exercise ordinary care to protect Akins from danger; and (5) Defendants' failure was a proximate cause of Akins's injury. *See Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 164 (Tex. App.—Dallas 2011, no pet.); *Tex. Dep't of Transp. v. Mackey*, 345 S.W.3d 760, 768 (Tex. App.—El Paso 2011, pet. denied).

Here, the record is devoid of evidence that Defendants had actual knowledge of an unreasonably dangerous condition at the jail. As the undisputed facts demonstrate, Defendants had no prior knowledge that the main sewer line to the jail had collapsed. Indeed, Liberty County was not even in control of the jail at the time Akins was incarcerated. *See Gen. Elec. Co. v. Moritz*,

257 S.W.3d 211, 214 (Tex. 2008) ("[A] Defendant's duty *is commensurate with the control it retains* over the independent contractor's work.") (emphasis in original) (quotations omitted). Further, at deposition, Akins testified that he had no personal knowledge of whether CEC or Liberty County had prior knowledge of the collapsed sewer line, and the jail records supplied to the court reflect merely the discovery and repair of the sewer line. Consistent with this evidence, Warden New confirmed that he had no prior knowledge of the collapsed pipe and that it had never collapsed while CEC's subsidiary operated the jail.

With regard to his alleged exposure to methane, Akins has adduced insufficient evidence that he was exposed to a dangerously high concentration of methane or any other harmful substance and no evidence that Defendants knew of any such hazard. Further, Akins has proffered no expert testimony suggesting that he was exposed to dangerous levels of any substance for the 20 or 30 minutes he was in the cell. *See Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 36 (Tex. App.—Houston [1st Dist.] 2004) ("Expert testimony is particularly necessary in chemical-exposure cases, in which medically complex diseases and causal ambiguities compound the need for expert testimony."); *see also Seaman v. Seacor Marine, L.L.C.*, 326 F. App'x 721, 723 (5th Cir. 2009) ("Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case.").

In short, Akins has submitted insufficient evidence of an unreasonably dangerous condition at the jail and no evidence of actual knowledge of any such a condition by Defendants. For these reasons, Defendants are entitled to summary judgment as to Akins's premises liability claims.

### 3. Release of Medical Information

Akins's claims for misuse and negligent handling of his medical information meet a similar fate. These claims appear to be premised on the Health Insurance Portability and Accountability Act ("HIPAA"). HIPAA, however, does not create a private right of action. *See Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006); *accord Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Crawford v. City of Tampa*, No. 09-15649, 2010 WL 3766627, at *2 (11th Cir. Sept. 28, 2010). Therefore, to the extent Akins seeks to recover for a violation of HIPAA, his claims fail.

In addition, Akins has adduced no competent summary judgment evidence that CEC, Liberty County, or their employees or agents released his medical information. Indeed, Akins's deposition testimony indicates that Buchanan stated to Brashier (who reportedly told Akins) that Cooper and New released Akins's medical information. Because this statement is hearsay, it is inadequate to defeat summary judgment. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir. 2001) (citing *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)); *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 283 (5th Cir. 1991).

Moreover, Akins admitted at deposition that he released information about his blood pressure to the media, and his sleep apnea condition and use of a CPAP machine were discussed with Judge Hight in open court. Akins has submitted no competent summary judgment evidence that New or any other Defendant released any confidential health information about Akins or that he suffered damages as a result. Therefore, summary judgment is proper as to this claim.

### 4. Defamation

In Count IX of the complaint, Akins asserts defamation, libel per se, and defamation per se claims based on statements allegedly issued suggesting that Akins "violated certain laws,

committed fraud, had a judgment issued against him, was not a Texas resident, and made attacks upon [his] conduct, integrity, and truthfulness." These allegations, however, are directed solely against defendants who were previously dismissed from this case. *See* Footnote 2. Notably, Akins admitted at deposition that he is not asserting any defamation claims against CEC, New, or Liberty County, and is not aware of CEC, New, Liberty County, Patterson, or Fitzgerald publishing any defamatory statements about him.

### 5. Abuse of Official Capacity and Official Oppression

Count IV of the complaint asserts a claim for "Abuse of Official Capacity" and "Official Oppression." Section 39.02 of the Texas Penal Code, entitled "Abuse of Official Capacity," provides:

(a) A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly:

(1) violates a law relating to the public servant's office or employment; or

(2) misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment.

TEX. PENAL CODE § 39.02(a).

"Official Oppression" is codified at § 39.03 of the Texas Penal Code. It states in relevant part:

(a) A public servant acting under color of his office or employment commits an offense if he:

(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

> (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or
>
> (3) intentionally subjects another to sexual harassment.

TEX. PENAL CODE § 39.03(a).

The Texas Penal Code, however, "does not create private causes of action." *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.); *Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ denied); *see also Joyner v. DeFriend*, 255 S.W.3d 281, 283 (Tex. App.—Waco 2008, no pet.); *Geiger v. Landes*, No. 12-01-00152, 2002 WL 169284, at *3 (Tex. App.—Tyler Jan. 31, 2002, pet. denied) (dismissing claims brought pursuant to Texas Penal Code §§ 39.02 and 39.03 on the basis that the Texas Penal Code does not provide private rights of action). Consistent with the foregoing, these claims are without merit.

### 6.    Conspiracy Under Texas Law

Akins generally contends that Defendants engaged in a conspiracy by detaining him under conditions that violated his constitutional rights. He also alleges that Defendants violated HIPAA by releasing his protected health information to unauthorized sources, defamed him, and otherwise damaged him publicly and professionally.[10]

To hold Defendants liable under Texas law for civil conspiracy, Akins must prove five elements: "'(1) two or more persons; (2) an end to be accomplished; (3) meeting of minds on the end or course of action; (4) one or more overt, unlawful acts; and (5) proximately resulting in injury.'" *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 709 (5th Cir. 2009)

---

[10] As set forth in Section II.E.3. *supra*, HIPAA does not create a private right of action. *See Acara*, 470 F.3d at 572; *accord Jones*, 623 F.3d at 569; *Crawford*, 2010 WL 3766627, at *2.

(quoting *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008)); *accord Murray*, 405 F.3d at 293; *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 635 (5th Cir. 2002); *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *Denson v. Dallas Cnty. Credit Union*, 262 S.W.3d 846, 851 (Tex. App.—Dallas 2008, no pet.). Akins's allegations are wholly unsupported by facts indicative of a conspiracy among Defendants and, hence, cannot survive. He points to no evidence that any Defendant to this action committed an illegal or overt act or that Defendants made an agreement to commit an unlawful act. *See Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (stating that "[t]o establish a cause of action based on conspiracy[,] a plaintiff must show that the defendants agreed to commit an illegal act"); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 80 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("[C]ivil conspiracy requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.") (internal quotations omitted). Akins's civil conspiracy claims, therefore, must fail.

### 7. Intentional Infliction of Emotional Distress

Akins's claims for intentional infliction of emotional distress against Defendants are based on their alleged "conspiracy to injure, defame, and/or violate [Akins's] constitutional rights." More specifically, these claims appear to be premised on the communication or publication of "false" statements concerning his health and other unspecified personal information. As stated in previous sections, however, Akins is not asserting any defamation claims against Defendants, Liberty County has not waived its sovereign immunity from a claim for intentional infliction of emotional distress, and Akins has conceded that he is not aware of CEC, New, Liberty County, Patterson, or Fitzgerald publishing any defamatory statements about him.

In addition, Akins has not pleaded or adduced any admissible evidence in support of his claim for intentional infliction of emotional distress other than those underlying his § 1983 claims and defamation claims under Texas common law. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (stating that in Texas, "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies"); *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 441 (Tex. 2004); *Bell v. Express Energy Servs. Operating, LP*, No. 02-11-00019-CV, 2012 WL 2036437, at *4 (Tex. App.—Fort Worth, June 7, 2012, no pet.). Moreover, a plaintiff may not assert a claim for intentional infliction of emotional distress merely because of his inability to prevail on another theory of relief designed to address the gravamen of the plaintiff's complaint. *See Creditwatch, Inc.*, 157 S.W.3d at 816; *Garcia v. Shell Oil Co.*, 355 S.W.3d 768, 776 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Because § 1983 and defamation under Texas law are the appropriate avenues for redress for Akins's alleged injuries, his intentional infliction of emotional distress claims must be dismissed. *See Louis v. Mobil Chem. Co.*, 254 S.W.3d 602, 609 (Tex. App.—Beaumont 2008, pet. denied) ("Where the gravamen of the complaint is really another tort, intentional infliction of emotional distress is unavailable even if the evidence would be sufficient to support a claim for intentional infliction of emotional distress in the absence of another remedy."). Moreover, even were the court to conclude that Akins could assert a claim for intentional infliction of emotional distress, his pleadings are insufficient under *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009), and he has tendered no evidence to support any element of such a claim. *See Larson v. Hyperion Int'l Techs., L.L.C.*, 494 F. App'x 493, 496 (5th Cir. 2012) ("The elements of a claim for intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the

defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.") (internal quotations omitted); *Brennan v. Mercedes Benz USA*, 388 F.3d 133, 136 (5th Cir. 2004); *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001), *cert. denied*, 534 U.S. 1172 (2002); *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). For these reasons, Akins's claims for intentional infliction of emotional distress must be dismissed.

F.    Remaining Defendants

Akins's complaint mentions unnamed employees of Liberty County and CEC. These individuals, however, have not been identified or served. *See Jackson v. Cain*, 864 F.2d 1235, 1238 n.1 (5th Cir. 1989) (noting that a former employee of the prison who was never served with process is "no longer a defendant."). In any event, the Fifth Circuit has recognized that when a defending party "establishes that the plaintiff has no cause of action, . . . th[e] defense generally inures also to the benefit of other similarly situated defendants." *Bloch v. Samuels*, No. H-04-4861, 2006 WL 2239016, at *9 (S.D. Tex. Aug. 3, 2006) (citing *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001)); *see Armenta v. Pryor*, 377 F. App'x 413, 415 n.1 (5th Cir. 2010); *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967); *Snell v. Cmty. Educ. Ctrs.*, No. 5:11-CV-126, 2012 WL 3956328, at *15-16 (E.D. Tex. June 20, 2012), *report and recommendation adopted by* 2012 WL 3930062 (E.D. Tex. Sep. 10, 2012). The instant memorandum opinion addressing the motions filed by CEC, New, Liberty County, and Fitzgerald disposes of all remaining claims presented in the complaint. Thus, because the named Defendants have shown that Akins has no viable cause of action, any unnamed or unserved defendants are entitled to benefit from the court's ruling on the motions addressed herein.

III.     Conclusion

Consistent with the foregoing analysis, Akins fails to present a claim that warrants relief.
Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants' motions for
summary judgment are GRANTED.  Further, CEC and Warden New's motion for judgment on
the pleadings is GRANTED with respect to Akins's claims against them for intentional infliction
of emotional distress and abuse of official capacity or official oppression.  Finally, any claims
against unnamed and unserved employees of CEC and Liberty County are DISMISSED.

SIGNED at Beaumont, Texas, this 9th day of January, 2014.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE